## Burns v. Treadway & Webb.

(Decided February 20, 1917.)

### Appeal from Clay Circuit Court.

1. Partnership—Settlement of Debt—Fraud of Partners—Evidence.—In an action by a partnership against a debtor, who defended on the ground that the debt was settled in full by the transfer of certain property to a member of the firm, evidence examined and held insufficient to sustain the plea that the settlement was the result of a fraudulent scheme between the creditor and the partner with whom the settlement was made.

2. Partnership—Compromise of Debts—Authority of Partner.—Where one partner has sold his interest in a partnership business to the other member of the firm, but the transfer does not include out-

standing debts, and there is no agreement or notice to creditors that one partner alone has the power of collection, either partner has the authority to compromise and discharge claims against third parties, even though the other partner has brought suit for a settlement of the partnership and notifies the debtor not to settle with the partner with whom the settlement was made.

A. T. W. MANNING for appellant.

WEBB, HOUSE & WEBB for appellee.

OPINION OF THE COURT BY WILLIAMS ROGERS CLAY, COMMISSIONER—Granting appeal and reversing.

G. L. Burns was indebted to W. H. Treadway and T. H. Webb, a partnership doing business under the name of Treadway & Webb. The indebtedness was secured by a mortgage on a grist mill and fixtures and three mules which Burns owned. The balance due on the indebtedness was $321.12. Suit was brought by the partnership to recover judgment for this amount and to enforce the mortgage lien. Burns pleaded that he had made a full and complete settlement of the indebtedness by transferring to the plaintiffs two mules, one wagon and gears, for the stipulated and agreed price of $321.12, and filed with his answer a receipt signed by Treadway & Webb, by W. H. Treadway, which recited that said property had been received in full payment of the amount due the firm of Treadway & Webb, and that the mortgages had been satisfied in full. Plaintiffs replied and alleged that there was no sale to Treadway & Webb, but that the defendant, Burns, and W. H. Treadway, in order to deprive the firm of Treadway & Webb of the use of the indebtedness of the defendant, entered into a scheme, collusion and conspiracy whereby the defendant sold to W. H. Treadway the two mules, wagon and gears mentioned in the answer for the amount of the indebtedness of the defendant to the plaintiffs. They further alleged that the defendant was notified by the plaintiff, T. H. Webb, not to sell said mules to said Treadway before said sale was made, and that the defendant knew at the time of said sale that suit had been brought against him to collect said indebtedness and that Treadway did not mean or aim to pay the firm of Treadway & Webb said amount, and that Treadway was insolvent. They also alleged that defendant knew at the time that suit had been brought to settle the partnership of Treadway & Webb. There was an additional allegation to the effect

that the partnership of Treadway & Webb ceased to do business in July, 1915, when the plaintiff, T. H. Webb, sold out his interest, not including debts, to plaintiff, W. H. Treadway. Defendant's demurrer to the reply was overruled and a rejoinder filed denying its allegations. Evidence was heard and the chancellor, after adjudging that the attempted settlement between the defendant and W. H. Treadway was void, entered judgment enforcing the mortgage lien of plaintiffs. Burns has moved for an appeal.

Webb, after stating the amount of Burns' indebtedness, testified in substance as follows: In 1915 he sold out his interest in the remainder of the jobs which the partnership had on hand, but the transfer did not include any of the debts due the firm. Shortly thereafter he brought suit against Treadway for a settlement of the partnership. That suit was pending at the time he testified and the partnership affairs had not then been settled. Since July, 1915, the firm of Treadway & Webb had existed only in liquidation. On one occasion Burns came to him and he then told Burns that suit had been brought to settle the partnership and asked Burns not to make any deal with Treadway. There was also then pending an injunction suit to prevent Treadway from disposing of any of the property of Treadway & Webb. In his opinion, the property transferred by Burns to Treadway was worth only about $200.00.

Burns testified as follows: He sold the two mules, wagon and gears to Treadway & Webb some time in August. He made the trade with Treadway, who was one of the partners of the firm of Treadway & Webb. The agreed price was $321.00 and a few cents. The property was sold and delivered in settlement of the debts claimed by plaintiffs. There was no scheme, collusion or conspiracy between him and Treadway to defeat the partnership. He had bought one of the mules for $200.00 and the other for $165.00. He gave $40.00 for the wagon. Since the sale, Treadway had had possession of the property. Treadway testified as follows: He was a member of the firm of Treadway & Webb. He bought the mules, wagon and gears in settlement of Burns' indebtedness and executed to him the receipt produced by Burns. At that time Burns owed the partnership of Treadway & Webb and witness offered to take the property for the debt. At that time Burns owned no property, except a mill, on which there were prior mort-

gages which had to be satisfied before the plaintiffs' debt could be paid. In making the sale there was no scheme, collusion or conspiracy between him and Burns to deprive the partnership of Treadway & Webb, or Webb himself, of the use and benefit of the debt against Burns. The reason he purchased the property and made the settlement was that he thought it was to the best interest of the partnership. Since then he had been in possession of the property and there had been no attempt on his part to deprive Webb, or the firm of Treadway & Webb, of either the property or the debt. In his opinion, the transfer was made about one month before he executed the receipt on September 11th, 1915.

Whether the plea of the partnership that the settlement between Burns and Treadway was the result of a fraudulent scheme between Burns and Treadway, a member of the partneship and one of the plaintiffs in the action, would be available as a defense to the settlement if fraud had been shown, we deem it unnecessary to decide. In our opinion, Webb testifies to no fact from which it could be reasonably inferred that the settlement was not made in good faith. On the contrary, it is clear from the evidence that plaintiffs' mortgage on the mill was subject to prior mortgages; that Burns was insolvent and that Treadway, therefore, acted for the best interest of the partnership in accepting the mules, wagon and gears in payment of the debt, and thus saving the additional cost and expense incident to an enforcement of the lien. The question of fraud being eliminated, the validity of the settlement turns on the authority of Treadway. While Webb claims to have sold out his interest in the partnership to Treadway, he says that the transfer did not include his interest in the debts due by defendant and others to the firm. That being true, the partnership still existed for the purpose of collecting such outstanding debts. The mere filing of the suit by Webb, seeking a dissolution and settlement of the partnership, did not *ipso facto* operate as a dissolution. Bagnetto v. Bagnetto, 51 La. Ann. 1200. And in the absence of an agreement to the contrary and of notice of this agreement to the creditor, either Treadway or Webb had the power to compromise and discharge the firm's claim against Burns. Sweet v. Morrison, 103 N. Y. 235. Here there was no agreement between Treadway and Webb that Webb alone should col-

lect the outstanding debts, and the mere fact that Webb told Burns not to settle with Treadway did not deprive Treadway of the authority to make the settlement, or in any way affect the validity of the settlement. We, therefore, conclude that the chancellor erred in setting aside the settlement and rendering judgment enforcing the mortgage lien.

Wherefore, the appeal is granted, the judgment reversed and cause remanded, with directions to dismiss the petition.